1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMI JUAREZ,<br><br>               Plaintiff,<br><br>       vs.<br><br>CAROLYN COLVIN, Acting<br>Commissioner of Social Security,<br><br>         Defendant. | Case No. CV 13-2506 RNB<br><br>ORDER REVERSING DECISION OF<br>COMMISSIONER AND REMANDING<br>FOR FURTHER ADMINISTRATIVE<br>PROCEEDINGS |

Plaintiff filed a Complaint herein on April 9, 2013, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income. In accordance with the Court's Case Management Order, the parties filed a Joint Stipulation on March 3, 2014. Thus, this matter now is ready for decision.[1]

---

[1]    As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined

(continued...)

1

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that plaintiff is raising as the grounds for reversal and remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") made a proper step two finding, properly determined plaintiff's residual functional capacity ("RFC"), and posed complete hypothetical questions to the vocational expert.

2. Whether the ALJ properly considered the opinion of plaintiff's treating physician.

3. Whether the ALJ made a proper adverse credibility determination with respect to the lay witness statement.

4. Whether the ALJ made a proper adverse credibility determination with respect to plaintiff's subjective symptom testimony.

**DISCUSSION**

For the reasons discussed hereafter, the Court concurs with the Commissioner that reversal is not warranted based on the ALJ's alleged failure to make a proper adverse credibility determination with respect to plaintiff's subjective symptom testimony, or based on the ALJ's alleged failure to properly consider the treating physician's opinion, or based on the ALJ's alleged failure to make a proper step two finding.  However, the Court is unable to affirm the ALJ's RFC determination because the Court concurs with plaintiff that the ALJ failed to properly consider evidence of plaintiff's physical limitations, failed to properly consider evidence of plaintiff's mental limitations, and failed to make a proper adverse credibility

[1](...continued)
which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

2

determination with respect to the lay witness statement of plaintiff's daughter. Moreover, it follows from the Court's inability to affirm the ALJ's RFC determination that the Court also is unable to affirm the ALJ's vocational determination.

**A.    Reversal is not warranted based on the ALJ's alleged failure to make a proper adverse credibility determination with respect to plaintiff's subjective symptom testimony.**

Disputed Issue 4 is directed to the ALJ's adverse credibility determination with respect to plaintiff's subjective symptom testimony.  (See Jt Stip at 48-56.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  Under the "Cotton test," where as here the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).

Here, plaintiff testified that she could not work because of an inability to sit for long periods of time without pain in her shoulders, back, knees, and hips; an inability to concentrate; and an inability to drive, walk for long distances, or use her hands very well.  (See AR 50-51.)  The ALJ found that, although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence, and limiting

3

1
2

effects of these symptoms were not credible to the extent they were inconsistent with
the ALJ's RFC determination.[2]  (See AR 28.)

3
4
5
6

In support of this adverse credibility determination, the ALJ proffered three
reasons.  The Court finds that, although one of the stated reasons was legally
insufficient, the error was harmless because the other two reasons were legally
sufficient.

7
8
9
10
11
12
13
14
15
16
17
18

One of the reasons cited by the ALJ was that plaintiff's daily activities "are not
limited to the extent one would expect, given the complaints of disabling symptoms
and limitations."  (See AR 28.)  Specifically, the ALJ noted plaintiff's ability to
attend her doctor's appointments on her own, as well as plaintiff's ability to drive, go
shopping, go to church, and visit with family.  (See AR 28; see also AR 177, 178.)
The Court finds that this was not a legally sufficient reason on which the ALJ could
properly rely in support of her adverse credibility determination because the first cited
activity, plaintiff's attendance of doctor's appointments on her own, is not supported
by the record.  Rather, the record of plaintiff's doctor's appointments is silent about
whether plaintiff attended on her own or arrived with the assistance of other people.
Moreover, the record reflects that plaintiff sometimes received rides when she had to
go places.  (See AR 177, 197.)

19
20
21
22
23
24

Another reason cited by the ALJ was that plaintiff had "credibility issues, in
that the record reflects that [plaintiff] has told a treating physician that she has never
used drugs, when the record and [plaintiff]'s own testimony demonstrate a history of
methamphetamine abuse."  (See AR 28; see also AR 367.)  The Court finds that this
was a legally sufficient reason on which the ALJ could properly rely in support of her
adverse credibility determination.  See Thomas v. Barnhart, 278 F.3d 947, 959 (9th

25

26
27
28

[2]    The ALJ's RFC determination was for "light work as defined by 20
C.F.R. 404.1567(b) and 416.967(b) except: occasionally stoop, overhead reach; no
concentrated exposure to extreme heat/cold; no concentrated exposure to dust, fumes,
respiratory irritants; and only unskilled work."  (See AR 27.)

4

1   Cir. 2002) (claimant's presentation of conflicting information about her drug and

2   alcohol usage was a clear and convincing reason to discount her testimony); see also

3   Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (relying on inconsistent

4   statements about alcohol use to reject claimant's testimony).  Plaintiff disputes the

5   legal sufficiency of this reason by pointing out that she proffered an explanation, after

6   the ALJ issued her decision, that plaintiff had misunderstood her treating physician's

7   inquiry about drug usage to cover only her experience with pain killing drugs, not

8   illicit drugs such as methamphetamine. (See Jt Stip at 50; see also AR 8.)  The Court

9   is unpersuaded by plaintiff's after-the-fact explanation because the record clearly

10  reflects that the treating physician reported plaintiff's denial of using "any" drugs, not

11  just pain killing drugs.  (See AR 367.)  Moreover, even if plaintiff's explanation did

12  constitute a rational interpretation of her response to her treating physician's query,

13  the fact remains that the ALJ's different interpretation of the evidence also was

14  rational.  It is not the Court's role to second-guess an ALJ's rational interpretation of

15  the evidence merely because plaintiff is able to proffer an alternative rational

16  interpretation.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where

17  evidence is susceptible to more than one rational interpretation, it is the ALJ's

18  conclusion that must be upheld.").

19       Another reason cited by the ALJ was that plaintiff's treatment notes "reflect

20  routine care and rarely are complaints of back or hip pain or depression mentioned."

21  (See AR 28; see also AR 351-73.)  With respect to plaintiff's hip pain in particular,

22  the ALJ further noted that plaintiff was to undergo hip replacement surgery, "but with

23  a reasonable recovery time, the record does not establish that she would be unable to

24  resume light work."  (See AR 28.)  The Court finds that this constituted a legally

25  sufficient reason on which the ALJ could properly rely in support of her adverse

26  credibility determination.  See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)

27  (evidence of conservative treatment is sufficient to discount a claimant's testimony

28  regarding severity of an impairment); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.

5

1    1983) (ALJ may consider whether treatment produces fair response or control of pain
2    that is satisfactory).

3         In sum, the Court finds that even if the ALJ did err in relying on one of her
4    three stated reasons in support of her adverse credibility determination, the error was
5    harmless because the ALJ's other two reasons and ultimate adverse credibility
6    determination were supported by substantial evidence.  See Carmickle v. Comm'r
7    Social Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding that ALJ's
8    reliance on two invalid reasons in support of adverse credibility determination was
9    harmless where remaining reasons were adequately supported by substantial
10   evidence).

11

12   **B.    Reversal is not warranted based on the ALJ's alleged failure to properly**
13   **consider the opinion of plaintiff's treating physician.**

14        Disputed Issue 2 is directed to the ALJ's rejection of the opinion of Dr.
15   Gjerdrum, plaintiff's treating physician.  (See Jt Stip at 37-43.)

16        The law is well established in this Circuit that a treating physician's opinions
17   are entitled to special weight because a treating physician is employed to cure and has
18   a greater opportunity to know and observe the patient as an individual.  See
19   McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating physician's
20   opinion is not, however, necessarily conclusive as to either a physical condition or the
21   ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.
22   1989).  The weight given a treating physician's opinion depends on whether it is
23   supported by sufficient medical data and is consistent with other evidence in the
24   record.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If the treating physician's
25   opinion is uncontroverted by another doctor, it may be rejected only for "clear and
26   convincing" reasons.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Baxter
27   v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991).  Where, as here, the treating
28   physician's opinion is controverted, it may be rejected only if the ALJ makes findings

6

setting forth specific and legitimate reasons that are based on the substantial evidence of record.  See, e.g., Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

Here, Dr. Gjerdrum completed a questionnaire on August 8, 2011 entitled "Medical Source Statement (Physical)" about plaintiff's current limitations. (See AR 398-99.)  Dr. Gjerdrum's responses reflected that, on account of plaintiff's osteoarthritis, plaintiff would be limited inter alia to less than 10 pounds of lifting, less than 2 hours of standing or walking in an 8-hour workday, and less than 6 hours of sitting continuously in an 8-hour workday. (See AR 398.)  Dr. Gjerdrum also stated that these limitations had existed for "several years." (See id.)

The ALJ accorded "little weight" to Dr. Gjerdrum's opinion for two similar reasons. (See AR 28.)  First, the ALJ found that Dr. Gjerdrum's statement that plaintiff's limitations had existed for "several years" was inconsistent with Dr. Gjerdrum's noting elsewhere that he "only recently saw [plaintiff] in July 2011 to evaluate hip pain which was reported as increasing over the prior six months." (See AR 28; see also AR 398, 405.)  The Court finds that this was a legally sufficient reason on which the ALJ could properly rely to accord little weight to Dr. Gjerdrum's opinion. See Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (ALJ properly rejected treating medical opinion that had internal inconsistencies).  Although plaintiff disputes the legal sufficiency of this reason by arguing that she has a long history of hip pain (see Jt Stip at 38-40), the evidence proffered by plaintiff in fact corroborates the ALJ's finding that her hip pain became substantially worse in the six months prior to Dr. Gjerdrum's opinion (see AR 405).

Second, the ALJ similarly found that Dr. Gjerdrum's opinion was inconsistent with Dr. Gjerdrum's treatment notes, which reflected that "[plaintiff] had only a slight

limp and she was not using a cane." (See AR 28; see also AR 405.)  The Court finds
that this also was a legally sufficient reason on which the ALJ could properly rely to
accord little weight to Dr. Gjerdrum's opinion.  See Valentine v. Comm'r of Social
Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between a treating
physician's opinion and his treatment notes constitutes a specific and legitimate
reason for rejecting the treating physician's opinion); Bayliss v. Barnhart, 427 F.3d
1211, 1216 (9th Cir. 2005) (contradiction between treating physician's assessment
and clinical notes justifies rejection of assessment); Johnson v. Shalala, 60 F.3d 1428,
1433 (9th Cir. 1995) (contradiction between treatment notes and finding of disability
was valid reason to reject treating physician's opinion); 20 C.F.R. §§ 404.1527(c)(4),
416.927(c)(4) (ALJ may consider consistency between treating medical opinion and
record as a whole).

**C.**   **Reversal is not warranted based on the ALJ's alleged failure to make a
proper step two finding.**

Part of Disputed Issue 1 is directed to the ALJ's step two finding.  (See Jt Stip
at 5, 9-10, 22-24.)

Step two of the Commissioner's sequential evaluation process requires the ALJ
to determine whether an impairment is severe or not severe.   See 20 C.F.R.
§§ 404.1520(a), 416.920(a).  The Social Security Regulations and Rulings, as well
as case law applying them, discuss the step two severity determination in terms of
what is "not severe."  According to the Commissioner's regulations, an impairment
is not severe if it does not significantly limit the claimant's physical or mental ability
to do basic work activities." See 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c),
416.921(a).  Basic work activities are "abilities and aptitudes necessary to do most
jobs," including "[p]hysical functions such as walking, standing, sitting, lifting,
pushing, pulling, reaching, carrying, or handling."  Basic work activities also include
mental activities such as understanding, carrying out, and remembering simple

8

1  instructions; use of judgment; responding appropriately to supervision, co-workers,

2  and usual work situations; and dealing with changes in a routine work setting.  See

3  20 C.F.R. §§ 404.1521(b), 416.921(b); Social Security Ruling ("SSR") 85-28.  The

4  Ninth Circuit has described step two as "a de minimis screening device to dispose of

5  groundless claims."  See Smolen, 80 F.3d at 1290; see also Webb v. Barnhart, 433

6  F.3d 683, 687 (9th Cir. 2005).

7      Here, the ALJ found at step two of the Commissioner's sequential evaluation

8  process that plaintiff had the following severe impairments: "left hip protrusion and

9  pincer-type hip with degenerative changes pending hip replacement; major

10 depression, recurrent, moderate; amphetamine dependence, in remission." (See AR

11 24.) Plaintiff contends that the ALJ erred by failing to include in her step two finding

12 the impairments of fibromyalgia, asthma, and arthritis. (See Jt Stip at 9-10.)

13     However, the Court notes that the record includes no evidence of a diagnosis

14 of fibromyalgia or asthma; indeed, plaintiff conceded at the administrative hearing

15 that she had not been diagnosed with fibromyalgia because she had been unable to

16 see a rheumatologist. (See AR 51.)  In the absence of such diagnoses, the ALJ did

17 not err in excluding fibromyalgia and asthma from her step two finding.  See Ukolov

18 v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (ALJ committed no legal error in

19 finding lack of impairment at step two where none of the medical opinions included

20 a finding of impairment, a diagnosis, or objective test results).

21     The record does include evidence that plaintiff was diagnosed with

22 osteoarthritis. (See AR 398.)  But assuming arguendo that the ALJ erred in failing

23 to list arthritis in her step two finding, the only limitations associated with that

24 diagnosis were the limitations posited by Dr. Gjerdrum, to which the ALJ accorded

25 little weight for legally sufficient reasons, as discussed above.  Moreover, plaintiff

26 has not specified or proffered evidence of any additional limitations from the arthritis

27 that the ALJ failed to consider.  See Valentine, 574 F.3d at 692 n.2 ("We reject any

28 invitation to find that the ALJ failed to account for Valentine's injuries in some

9

1  unspecified way.").  Accordingly, the Court finds that any error by the ALJ in failing
2  to list arthritis in her step two finding was harmless.

3

4  **D.  The ALJ failed to properly consider evidence of plaintiff's physical**
5  **limitations for purposes of her RFC determination.**

6       Another part of Disputed Issue 1 is directed to the portion of the ALJ's RFC
7  determination setting out plaintiff's physical limitations.  (See Jt Stip at 6-13, 24-30.)
8  As noted above, the ALJ's RFC determination reflected a limitation to "light work
9  as defined by 20 C.F.R. 404.1567(b) and 416.967(b) except: occasionally stoop,
10  overhead reach; no concentrated exposure to extreme heat/cold; [and] no concentrated
11  exposure to dust, fumes, respiratory irritants."  (See AR 27.)

12       It appears that plaintiff is challenging the physical limitations contained in the
13  ALJ's RFC determination in two separate respects.  First, plaintiff contends that the
14  ALJ improperly credited the opinion of a state agency review physician, Dr. Frye,
15  over the opinions of the treating physician, Dr. Gjerdrum, and the examining
16  physician, Dr. Siekerkotte.  (See Jt Stip at 6-8, 9.)  Second, plaintiff contends that the
17  ALJ's RFC determination should have accounted for plaintiff's need for a cane or
18  back brace, her limitations in fine and gross manipulation, and her limitations due to
19  visual deficits and obesity.  (See Jt Stip at 12-13.)  As discussed below, the Court
20  concurs with plaintiff only with respect to Dr. Siekerkotte.

21       First, the Court disagrees with plaintiff's contention that the ALJ's RFC
22  determination should have accounted for plaintiff's need for a cane or back brace, her
23  limitations in fine and gross manipulation, and her limitations due to visual deficits
24  and obesity.  To the extent that any of these limitations were recommended by Dr.
25  Gjerdrum, such as the use of a cane and limitations in fine and gross manipulation
26  (see AR 399, 405), it follows from the Court's finding that the ALJ provided legally
27  sufficient reasons to accord little weight to Dr. Gjerdrum's opinion that the ALJ did
28  not err in failing to include these limitations in the RFC determination.  Moreover,

1  there was no evidence that plaintiff needed a back brace, only evidence that plaintiff

2  purchased a back brace at a store.  (See AR 376.)  Similarly, plaintiff has proffered

3  no evidence of limitations owing to visual deficits that the ALJ was required to

4  consider for purposes of her RFC determination.  Finally, with respect to plaintiff's

5  alleged obesity, the ALJ did not err in failing to properly consider this condition

6  because the most recent medical records established that plaintiff was not obese based

7  on her measurements (6 feet tall and 195 pounds).[3]  (See AR 405.)

8          However, the Court does find that the ALJ failed to properly consider the

9  physical limitations reflected in the opinion of the examining physician, Dr.

10 Siekerkotte.   Upon examining plaintiff, Dr. Siekerkotte completed a functional

11 assessment in which she stated that plaintiff should be limited to standing for 2-4

12 hours in an 8-hour workday; sitting for 6 hours in an 8-hour workday; and lifting and

13 carrying 10 pounds frequently and 20 pounds occasionally; and that plaintiff should

14 also have various postural and manipulative limitations.  (See AR 377-78.)  The

15 Commissioner argues that the ALJ properly gave "little weight" to Dr. Siekerkotte's

16 opinion because Dr. Siekerkotte appeared to have relied quite heavily on the

17 subjective report of symptoms and limitations provided by plaintiff, and seemed to

18 uncritically accept as true most, if not all, of what plaintiff reported; and because

19 contemporaneous treatment notes showed that plaintiff was generally doing well.

20 (See Jt Stip at 26-27; see also AR 29.)  The Court finds that neither reason was legally

21 sufficient.  Although there is authority for the proposition that a physician's opinion

22 premised to a large extent upon the claimant's own account of her symptoms and

23

24          [3]       Under the Commissioner's regulations, a person with a body mass index

25 ("BMI") of 30 or above is considered obese.  See SSR 02-1p, at *2 ("For adults, both

26 men and women, the Clinical Guidelines describe a BMI of . . . 30.0 or above as

27 'obesity.'").  Based on her height and weight, plaintiff's BMI was only 26.4.  See

28 http://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculat
   or/bmi_calculator.html.

1  limitations may be disregarded where those complaints have been properly
2  discounted, see Morgan, 169 F.3d at 602, that authority is inapplicable here.  The
3  record reflects that Dr. Siekerkotte's opinion was not premised to a large extent upon
4  plaintiff's own account of her symptoms, but upon Dr. Siekerkotte's own objective
5  findings, which included a review of plaintiff's medical records, an interview, and her
6  own physical examination.  (See AR 374-78.)  Dr. Siekerkotte also specifically
7  explained the objective clinical basis for the functional limitations she posited.  (See
8  AR 377-78.)  Accordingly, this was not a legally sufficient reason to accord little
9  weight to Dr. Siekerkotte's opinion for purposes of the ALJ's RFC determination.
10  See Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1300 (9th
11  Cir. 1999) (examining physician did not simply take claimant's statements "at face
12  value" where he interviewed the claimant twice, confirmed his complaints, conducted
13  extensive objective testing, and explained in detail how the results of each test
14  supported his diagnoses).  Moreover, the ALJ's rationale that contemporaneous
15  treatment notes showed that plaintiff was generally doing well, without more, is not
16  sufficiently specific to constitute a legally sufficient reason to accord little weight to
17  Dr. Siekerkotte's opinion for purposes of the ALJ's RFC determination. See Embrey
18  v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("To say that medical opinions are not
19  supported by sufficient objective findings or are contrary to the preponderant
20  conclusions mandated by the objective findings does not achieve the level of
21  specificity our prior cases have required."); Rodriguez v. Bowen, 876 F.2d 759, 762
22  (9th Cir. 1989) (same); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)
23  ("The ALJ must do more than offer his conclusions. He must set forth his own
24  interpretations and explain why they, rather than the doctors', are correct.") (citing
25  Embrey, 849 F.2d at 421-22); Regenitter, 166 F.3d at 1299 ("[C]onclusory reasons
26  will not justify an ALJ's rejection of a medical opinion.").
27  //
28  //

12

**E.**   **The ALJ failed to properly consider evidence of plaintiff's mental limitations for purposes of her RFC determination.**

Another part of Disputed Issue 1 is directed to the portion of the ALJ's RFC determination setting out plaintiff's mental limitations. (See Jt Stip at 8-9, 13-21, 30-34.) As noted above, the ALJ's RFC determination included a limitation to unskilled work. (See AR 27.)

It appears that plaintiff is challenging the ALJ's limitation of plaintiff to unskilled work in two respects. First, plaintiff contends that the ALJ improperly credited the opinion of a state agency review physician, Dr. Biala, over the opinion of Dr. Izzi, an examining psychologist. (See Jt Stip at 8-9.) Second, plaintiff contends that a limitation to unskilled work did not adequately capture the opinion of a state agency review physician and the ALJ's own finding that plaintiff had a moderate difficulty in maintaining concentration, persistence, and pace. (See Jt Stip at 14-15, 17; see also AR 26, 335-36.) As discussed below, the Court concurs with both of plaintiff's contentions.

First, the Court concurs with plaintiff that the ALJ failed to properly consider the opinion of the examining psychologist, Dr. Izzi. Upon examining plaintiff, Dr. Izzi completed a functional assessment in which he stated that plaintiff appeared "capable of performing a simple and repetitive type task on a consistent basis over an eight-hour period" with a moderate limitation in her "ability to get along with peers or be supervised." (See AR 382.) The Commissioner argues, as she did with respect to Dr. Siekerkotte, that the ALJ properly gave "little weight" to Dr. Izzi's opinion because Dr. Izzi appeared to have relied quite heavily on the subjective report of symptoms and limitations provided by plaintiff, and seemed to uncritically accept as true most, if not all, of what plaintiff reported; and because contemporaneous treatment notes showed that plaintiff was generally doing well. (See Jt Stip at 31; see also AR 29.) As discussed above, the second reason is not legally sufficient. The first reason also is not legally sufficient because the record reflects that Dr. Izzi's

13

1   opinion was not premised to a large extent upon plaintiff's own account of her

2   symptoms, but upon Dr. Izzi's own objective findings, which included a review of

3   plaintiff's medical records, a mental status examination, and objective psychological

4   testing that yielded valid results because plaintiff appeared to have put forth an

5   adequate effort. (See AR 379-82.)  The Court therefore finds that the ALJ failed to

6   provide legally sufficient reasons to accord little weight to Dr. Izzi's opinion for

7   purposes of her RFC determination.

8        Second, the Court concurs with plaintiff that the ALJ's limitation to unskilled

9   work did not adequately capture her moderate limitation in maintaining concentration,

10  persistence, and pace.  The Commissioner's reliance on Stubbs-Danielson v. Astrue,

11  539 F.3d 1169 (9th Cir. 2008) for the proposition that the ALJ's RFC determination

12  adequately captured plaintiff's limitation in concentration, persistence, and pace is

13  misplaced. (See Jt Stip at 33-34.)  In Stubbs-Danielson, the Ninth Circuit held that

14  "an ALJ's assessment of a claimant adequately captures restrictions related to

15  concentration, persistence, and pace where the assessment is consistent with

16  restrictions identified in the medical testimony." See id. at 1174.  There, the only

17  concrete restrictions identified in the medical testimony was a restriction to simple

18  tasks, despite some evidence that the claimant had deficiencies in pace and other

19  areas. See id.  However, in Brink v. Comm'r of Soc. Sec. Admin., 343 Fed. Appx.

20  211, 212 (9th Cir. 2009), the Ninth Circuit noted that Stubbs-Danielson – wherein the

21  medical testimony "did not establish any limitations in concentration, persistence, or

22  pace" – would be inapposite to cases where the medical testimony did establish such

23  limitations and where the ALJ accepted such testimony.  Here, the ALJ expressly

24  found, consistent with the opinion of a state agency review physician, that plaintiff

25  had a moderate limitation in maintaining concentration, persistence, and pace. (See

26  AR 26, 335-36.)  Accordingly, under Brink, whose reasoning the Court finds

27  persuasive, the ALJ's RFC determination should have included not only the limitation

28  to unskilled work, but also a moderate limitation in maintaining concentration,

14

persistence, and pace.  See also Lubin v. Comm'r of Soc. Sec. Admin., 507 Fed. Appx. 709, 712 (9th Cir. 2013) ("Although the ALJ found that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the vocational expert."); Gray v. Astrue, 2012 WL 4097762, at *9 (D. Idaho Sept. 17, 2012) (RFC determination and hypothetical question were incomplete where they failed to incorporate limitation in concentration, persistence, and pace that ALJ had accepted); Van Duong v. Astrue, 2012 WL 3648006, at *5 (E.D. Cal. Aug. 22, 2012) (same); Moza v. Astrue, 2012 WL 1869364, at *5 (D. Ariz. May 22, 2012) (same); Smith v. Astrue, 2011 WL 3962107, at *9 (C.D. Cal. Sept. 8, 2011) (same).

**F.     The ALJ failed to make a proper adverse credibility determination with respect to the lay witness statement of plaintiff's daughter.**

Disputed Issue 3 is directed to the ALJ's alleged failure to properly consider the testimony of plaintiff's daughter, Ashlee Ujano.  (See Jt Stip at 44-48.)

The law is well-established in this Circuit that lay witness testimony as to how a claimant's symptoms affect the claimant's ability to work is competent evidence and cannot be disregarded without providing specific reasons germane to the testimony rejected.  See, e.g., Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Smolen, 80 F.3d at 1288-89; Dodrill, 12 F.3d at 919.

Here, Ms. Ujano completed a Function Report by a Third Party describing plaintiff's activities and limitations.  (See AR 174-81.)  Ms. Ujano specified, in pertinent part, that plaintiff "can't lift stuff," "can't do a lot of physical stuff," and is affected in almost all areas of physical functioning by her illnesses, injuries, or conditions.  (See AR 179.)

The ALJ accorded "little weight" to Ms. Ujano's statements for the reason that "the opinions and statements of the State agency medical consultants are more

1   objective and less likely to be influenced by sympathy for [plaintiff] or other
2   emotional factors." (See AR 29.) The Court finds that this proffered reason for
3   discrediting Ms. Ujano's testimony was not legally sufficient under Ninth Circuit
4   jurisprudence. See Regennitter, 166 F.3d at 1298 (bias was not a legitimate reason
5   for discounting the corroborative testimony of the claimant's mother, who had
6   testified inter alia that she was the claimant's sole source of support); Smolen, 80
7   F.3d at 1289 ("The fact that a lay witness is a family member cannot be a ground for
8   rejecting his or her testimony."); see also Bruce v. Astrue, 557 F.3d 1113, 1116 (9th
9   Cir. 2009) ("A lay person . . . though not a vocational or medical expert, was not
10  disqualified from rendering an opinion as to how [a claimant]'s condition affects his
11  ability to perform basic work activities."); 20 C.F.R. §§ 404.1513(d)(4),
12  416.913(d)(4) (evidence provided by lay witnesses may be used to show "the severity
13  of [a claimant]'s impairment(s) and how it affects [the claimant]'s ability to work").
14  Moreover, the ALJ did not proffer any concrete evidence of Ms. Ujano's lack of
15  objectivity. See Valentine, 574 F.3d at 694 (evidence that a spouse exaggerated
16  might suffice to reject her testimony, but the fact that she was an interested party "in
17  the abstract" would not).

18      Moreover, the Commissioner's reliance on Molina v. Astrue, 674 F.3d 1104
19  (9th Cir. 2012), for the proposition that any failure by the ALJ to properly evaluate
20  Ms. Ujano's statement amounted to harmless error, is misplaced. (See Jt Stip at 47.)
21  In Molina, 674 F.3d at 1122, the Ninth Circuit held that an ALJ's failure to properly
22  discuss lay witness testimony was harmless error when that testimony "described the
23  same limitations as [claimant]'s own testimony, and the ALJ's reasons for rejecting
24  [claimant]'s testimony apply with equal force to the lay testimony." Here, by way of
25  contrast, Ms. Ujano – by stating that plaintiff "can't lift stuff," "can't do a lot of
26  physical stuff," and is affected in almost all areas of physical functioning – described
27  limitations that were not the same as those in plaintiff's testimony, but rather went
28  beyond those described by plaintiff. Accordingly, the ALJ's adverse credibility

16

1 | determination with respect to plaintiff's subjective symptom testimony could not

2 | render harmless the ALJ's failure to provide legally sufficient reasons to accord little

3 | weight to Ms. Ujano's statement.

4 |

5 | **G.    The ALJ failed to make a proper vocational determination.**

6 |        As part of Disputed Issue 1, plaintiff also contends that the ALJ failed to make

7 | a proper vocational determination.  (See Jt Stip at 21-22, 34-35.)  "The hypothetical

8 | question an ALJ poses to a vocational expert, which derives from the RFC, must set

9 | out all the limitations and restrictions of the particular claimant."  See Valentine, 574

10 | F.3d at 690 (citation and internal quotation marks omitted).  Here, it follows from the

11 | Court's inability to affirm the ALJ's RFC determination with respect to plaintiff's

12 | physical and mental limitations that the Court also is unable to affirm the ALJ's

13 | vocational determination.

14 |

15 |                              **CONCLUSION AND ORDER**

16 |        The law is well established that the decision whether to remand for further

17 | proceedings or simply to award benefits is within the discretion of the Court.  See,

18 | e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan,

19 | 888 F.2d 599, 603 (9th Cir. 1989); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir.

20 | 1981).  Remand is warranted where additional administrative proceedings could

21 | remedy defects in the decision.  See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th

22 | Cir. 1984); Lewin, 654 F.2d at 635.  Remand for the payment of benefits is

23 | appropriate where no useful purpose would be served by further administrative

24 | proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record

25 | has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986);

26 | or where remand would unnecessarily delay the receipt of benefits, Bilby v.

27 | Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

28 | //

1    Weighing in favor of a remand for further administrative proceedings here is

2    the fact that this is not an instance where no useful purpose would be served by

3    further administrative proceedings.  Rather, additional administrative proceedings

4    conceivably could remedy the defects in the ALJ's decision.

5    The Court is mindful of Ninth Circuit case authority holding that "the district

6    court should credit evidence that was rejected during the administrative process and

7    remand for an immediate award of benefits if (1) the ALJ failed to provide legally

8    sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that

9    must be resolved before a determination of disability can be made; and (3) it is clear

10    from the record that the ALJ would be required to find the claimant disabled were

11    such evidence credited." See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004);

12    see also, e.g., Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S.

13    1038 (2000)[4]; Smolen, 80 F.3d at 1292; Varney v. Secretary of Health & Human

14    Servs., 859 F.2d 1396, 1399-1401 (9th Cir. 1988).   Under the foregoing case

15    authority, when this test is met, the Court will take the improperly discredited

16    testimony as true and not remand solely to allow the ALJ another opportunity to make

17    specific findings regarding that testimony.   This rule applies not only to medical

18    opinion evidence, but also to improperly discredited lay witness testimony. However,

19    in Connett, 340 F.3d at 876, the panel held that the "crediting as true" doctrine was

20    not mandatory in the Ninth Circuit.   There, the Ninth Circuit remanded for

21    reconsideration of the claimant's credibility where the record contained insufficient

22    findings as to whether the claimant's testimony should be credited as true.  See id.

23    Based on its review and consideration of the entire record, the Court has

24    concluded on balance that a remand for further administrative proceedings pursuant

25

26

27    [4]    In Harman, the Ninth Circuit noted that this three-part test "really

28    constitutes a two part inquiry, wherein the third prong is a subcategory of the second." Harman, 211 F.3d at 1178 n.7.

1   to sentence four of 42 U.S.C. § 405(g) is warranted here.   Accordingly, IT IS

2   HEREBY ORDERED that Judgment be entered reversing the decision of the

3   Commissioner of Social Security and remanding this matter for further administrative

4   proceedings.[5]

5

6   DATED:  March 20, 2014

7

8   _____

9   ROBERT N. BLOCK
    UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____

28   [5]        It is not the Court's intent to limit the scope of the remand.

19